### THE CITY OF ABERDEEN.

#### (District Court, D. Washington, N. D. March 28, 1901.)

1. COLLISION—EVIDENCE OF NEGLIGENCE—CARE REQUIRED.

To render a vessel liable in damages for a collision, there must have been a failure on the part of her officers or crew to exercise ordinary prudence and vigilance or to act with ordinary promptness to avoid accidents, and, in the absence of any proof of a violation of some rule of navigation or harbor regulation, she cannot be held liable merely because her captain or some person in her service failed to prevent the collision by possible means, which would have required the highest degree of skill and the utmost quickness of movement.

2. SAME—INJURY TO VESSELS AT WHARF—STORM.

A steamer came up to her usual berth at a dock during a gale and storm, and, owing to the failure of the wharfinger to make fast her stern line in time to prevent it, she was swung around by the wind, striking and injuring a wharf boat which was moored in the same slip, and crushing an electric launch which was tied up to such boat. It appeared that the line was thrown promptly and the wharfinger acted with reasonable promptness, and that the engines were promptly reversed, but there was not time to make sternway before the ship swung so far that she could not go astern without striking the opposite wharf. Held, that, even with the presumption against her as the moving vessel, it could not be found, on such facts, that there was any want of ordinary care or skill on the part of her officers or crew which rendered her liable for the collision, but that the real cause of the accident was the violence of the storm.

In Admiralty. Suit in rem to recover damages for destruction of the electric engine launch named the "Wolverine," and injury to the intervening libelant's boat house by collision. Hearing on the merits. Suit dismissed.

Davis & Gilmore, for libelant.

R. II. Lindsay and Vince II. Faben, for claimant.

HANFORD, District Judge. On the night of February 5, 1900, the steamer City of Aberdeen came into Seattle harbor from Tacoma, and proceeded to tie up at her berth on the south side of the White Star dock, which projects in a southwesterly direction into the harbor. The next wharf southward of the White Star dock is distant less than 150 feet, the intervening space being about 140 feet, and the length of the Aberdeen is about 125 feet. Within this space between the two wharves the intervening libelant's floating boat house was moored, and was used as a landing for small boats, and also as a place for keeping boats for hire. The Wolverine was secured by a bow line attached to the boat house, and a stern line made fast to a pile supporting the structure known as "Railroad Avenue," upon which the tracks of the railroads crossing the city front are laid. The night of the occurrence herein referred to was stormy. There was a southwest gale blowing, and the waves were dashing with great violence over the boat house. The Aberdeen came in on a line parallel with the White Star dock, having the wind astern. She stopped in good time, with her head turned in towards the dock, and lines from the bow and stern were thrown to the dock promptly. By turning her head a little towards the dock when the lines were thrown out, she was placed slightly oblique to the dock, with her port quarter exposed to the force of the wind, and the wharfinger failed to secure the after line in time to prevent her from swinging to the southward by force of the wind; and before she could back and make sternway she was driven broadside into the slip between the two wharves, where she had no room to work either ahead or astern, and she jammed against the boat house, driving it in shore; and the Wolverine was caught between the boat house and the piles supporting Railroad avenue and crushed.

This suit is founded upon an alleged tort, and the onus probandi is upon the libelant and the intervener to prove that the injury to their property was caused by such negligence in the operation of the City of Aberdeen as to render the steamer liable as a wrongdoer; but I find in the evidence nothing to sustain the allegation of negligence, except the fact that the accident happened in the manner I have indicated. There is no evidence tending to prove that the steamer was intrusted to inexperienced or incompetent officers, nor that they were not attentive to their duties, except testimony of witnesses who were on the boat house to the effect that no bells or signals were given to the engineer. Considering the noise of the tempest, these witnesses could not have heard signals sounded in the engine room, and I do not credit their testimony on this point. The captain testified that the engines were backing, but there was not time enough to make sternway before the steamer swung around, so that she could not go astern without striking the wharf, and this is probably true. The whole case rests upon the presumption that when a collision happens between a vessel in motion under steam power and an object which is stationary, in a place where it has a

right to be, the moving vessel is in. fault. This presumption, however, is not conclusive, and in this case it is overcome by the undisputed fact that the real cause of the accident was the violence of the storm at the time. The accident might have been avoided if the City of Aberdeen had made a landing at some other place, but she had a right to go to her berth on the south side of the White Star dock. The accident might have been avoided if the wharfinger had been quicker in taking the stern line, or if the steamer had been quicker in reversing her engines and making sternway, or if her captain had not turned her head so as to catch the wind on her port quarter, when her headway was stopped. Whatever fault may be attributed to the captain or the engineer or the wharfinger for not averting the accident in the ways indicated consists only in a failure to anticipate the exact effect of suffering the boat to pause in the position in which she was placed, and in failure to beat the wind by the extraordinary celerity and precision of their movements; but negligence, to render the vessel liable for damages, must be a failure on the part of her officers or crew to exercise ordinary prudence and vigilance or to act with ordinary promptness to avoid accidents, and in the absence of proof of a violation of any rule of navigation or harbor regulation, or any rule prescribed for the prevention of collisions, a vessel is not chargeable with the consequences of a collision merely because her captain or some person in her service failed to avert the calamity by possible means, which would have required the highest degree of skill and the utmost quickness of movements. The libelant could easily have saved his boat from injury by giving intelligent care in time, and it would be manifestly unfair to hold the steamer liable to him when only slight negligence on the part of her captain or the wharfinger is shown, if, indeed, they can be considered in fault to any extent whatever. He was grossly negligent in leaving his boat exposed in a place where she was liable to be crushed, without any one aboard of her to act in case of an emergency. The evidence shows that he was on the boat house at the time of the accident and for some time previously, and was manifestly apprehensive of danger on account of the storm. The evidence also shows that he could have shoved his boat between the piles and under Railroad avenue, where she would not have been in danger of any contact with the boat house or any vessel coming into the slip, and that is what he was trying to do when the collision occurred; but he waited too long before commencing to act. A decree will be entered dismissing the case, with costs.